1
2
3
4
5                          **UNITED STATES DISTRICT COURT**
6                                **DISTRICT OF NEVADA**
7

8  CLARK COUNTY,                          )
                                          )
9                          Plaintiff,     )        Case No. 2:10-cv-00194-LRH-PAL
                                          )
10  vs.                                   )               **ORDER**
                                          )
11  JACOBS FACILITIES, INC., et al.,      )
                                          )
12                         Defendant.     )
    _____ )
13

14          This matter is before the court on the parties' discovery dispute concerning Jacobs Facilities,

15  Inc.'s ("Jacobs") production of a document known as the "Clark County Risk Assessment and

16  Mitigation Plan" and correspondence relating to the plan which were produced in discovery by Jacobs.

17  Jacobs claims the documents are protected by the attorney-client privilege, as well as the work product

18  doctrine, and that they were inadvertently produced by Jacobs.  Jacobs demanded return of the

19  documents, but Clark County refused to return them asserting the documents are either not privileged

20  or, in the alternative, if they were privileged, Jacobs waived the privilege.

21                                    **BACKGROUND**

22  **I.      The Complaint**

23          The Complaint in this case was filed in state court and removed (Dkt. #1) February 12, 2010.  It

24  involves an action by Plaintiff Clark County to recover in excess of $18,000,000.00 in fees paid by the

25  Plaintiff to Defendant Jacobs for services rendered in connection with an expansion of the Clark County

26  Detention Center ("CCDC") and to construct the Regional Justice Center ("RJC").  These two projects

27  are also referred to as the Justice Bond Projects.  Clark County also seeks to recover $9,669,698.00 it

28  paid to settle claims asserted by AF Construction Company ("AF") in connection with the CCDC

project, and $51,193,173.00 paid to AF as an arbitration award in favor of AF against Clark County in connection with the RJC project.

Defendant Jacobs was the construction manager for both projects. Clark County claims that Jacobs' gross mismanagement of the CCDC project was a significant contributing factor in it being compelled to pay AF an additional $31,000,000.00 on the project. Clark County also claims that Jacobs' gross mismanagement of the CCDC and RJC projects was a significant factor in Clark County being compelled to pay additional sums to complete the projects. Defendants filed motions to dismiss Plaintiff's equitable indemnity, unjust enrichment, contribution and apportionment claims on February 12, 2010. See Motions (Dkt. ##9, 10, 11, 12). Plaintiff and Defendants stipulated that Plaintiff would dismiss its eleventh, thirteenth and fourteenth causes of action without prejudice, and that Plaintiff would be permitted to amend its twelfth cause of action for unjust enrichment. Plaintiff and Defendants also agreed to dismiss Defendant Jacob Engineering Group, Inc. without prejudice. See Stipulation and Order (Dkt. #21). Clark County filed an Amended Complaint (Dkt. #30) on May 24, 2010.

**II.   Procedural History**

The parties submitted an initial proposed discovery plan and scheduling order requesting special scheduling review which proposed a November 15, 2011, discovery cutoff. The parties proposed to exchange initial disclosures by June 15, 2010, but did not wish to initiate discovery until October 1, 2010, while they determined whether they would agree to mediate their disputes. The court set the matter for hearing on May 13, 2010, to consider their proposal.

At the hearing, counsel for Plaintiff indicated that the parties had reached an impasse, and were unable to agree on a mediator. The parties conducted an initial Rule 26(f) conference, but had not discussed their discovery needs in any detail. Plaintiff advised the court that it expected to produce approximately 20,000,000 documents in the case. The bulk of the documents are in electronic form. Counsel for Plaintiff was working with a local firm to make the data available for production in a fully searchable, electronic database. Plaintiff also had approximately 300 boxes of hard copy documents and was discussing the manner in which these documents should be reviewed and/or produced with the Defendants. The parties believed they might have a dispute about the production of certain documents, but had not had an adequate opportunity to meet and confer to determine whether they could resolve

their dispute without court intervention.  The court advised counsel that their request for a November 15, 2011, discovery cutoff would not be approved.  The court required the parties to meet and confer to exchange the initial disclosures required by Fed. R. Civ. P. 26(a)(1) by June 15, 2010, and indicated the status conference would be conducted in approximately thirty days, and at regular intervals to monitor the parties' progress and resolve any disputes necessary to move this case forward towards final resolution in an expeditious manner.

Following the hearing, the court entered an Order (Dkt. #28) setting a status and dispute resolution hearing for June 22, 2010, requiring the parties to meet and confer to exchange their initial disclosures, and that the parties submit a joint status report addressing their progress in making their initial disclosures, the status of the exchange of ESI and hard copy productions, the results of the parties' discussions concerning the discovery each side anticipated would be necessary, and expert issues.  The order also required the parties to address any outstanding discovery disputes and describe them with sufficient specificity to allow the court to resolve them without the necessity of formal briefing.  The court indicated that a discovery plan and scheduling order would be entered at the June 22, 2010, hearing.

The parties requested, and received, a continuance of the status and dispute resolution hearing.  The hearing was conducted July 22, 2010.  The court considered and approved the parties proposed discovery plan and scheduling order, and entered a Scheduling Order (Dkt. #39) which established a September 16, 2011, discovery cutoff, and related case management deadlines consistent with LR 26-1(e).  The court conducted regular status and dispute resolution conferences to resolve the parties' disputes.  See Minutes of Proceedings (Dkt. #38, 45, 49, 52, 60, 63, 79, 92, 102, 111-112, 114).

On November 3, 2011, the parties submitted a Stipulation (Dkt. #106) requesting a stay of all proceedings pending mediation.  The district judge approved the stipulation in an Order (Dkt. #106) entered November 3, 2011.  He also entered a Minute Order (Dkt. #108) requiring the parties to submit a status report on or before February 28, 2012, if this action had not been resolved by then.  At the time the parties stipulated to a stay of all proceedings to attempt to resolve this case through mediation, the undersigned entered an Order (Dkt. #109) deeming the parties' discovery dispute concerning the mitigation plan withdrawn.  The order was explicit: "In the event the parties have been unable to

3

1    resolve this case through mediation, counsel for the moving parties shall file a notice requesting that the
2    motion to deem the document inadvertently produced be reinstated, and that the court enter a decision
3    resolving this discovery dispute." See Order (Dkt. #109).

4         Counsel for the parties addressed correspondence to this court on April 28, 2012, indicating they
5    had completed their mediation efforts and that although settlement was unsuccessful, there were
6    continuing discussions about another form of ADR, including perhaps some type of binding arbitration.
7    Alternatively, counsel advised that the parties may elect to submit a new discovery plan and scheduling
8    order to the court and requested that the court continue the status conference set for May 8, 2012, for
9    ten days.

10        The court granted the parties' request in a Minute Order (Dkt. #111) and continued the status
11   conference until May 21, 2012. At the status conference, the court considered the parties' proposed
12   discovery plan and scheduling order which proposed scheduling and case management deadlines to
13   have this case prepared for trial by July 2013. However, the parties' proposal exceeded the three-year
14   period for bringing this case to trial under the Civil Justice Reform Act. The court had reminded the
15   parties of the three-year rule since the initial scheduling conference conducted May 13, 2010, and
16   advised the parties that their schedule was unlikely to be approved. After consultation with the district
17   judge who directed that this matter be set for trial on his calendar on February 18, 2013, the court
18   entered a Discovery Plan and Scheduling Order (Dkt. #115), designed to complete discovery and bring
19   the case to trial by the date established by the district judge. The Plaintiff filed a Motion for the District
20   Judge to Reconsider the Scheduling Order (Dkt. #116). The district judge granted in part and denied in
21   part the motion for reconsideration extending the case management deadlines, and continuing the trial
22   until April 30, 2013.

23   **III.    The Parties' Dispute**

24        The dispute was initially raised in the parties' Joint Status Report (Dkt. #91), and was
25   considered during the status conference conducted September 29, 2011, along with a number of other
26   discovery disputes. At the September 29, 2011, hearing, the court heard representations of counsel and
27   granted counsel additional time to provide information and supplemental briefing. Clark County filed
28   its Supplemental Brief in Support of Waiver of Any Attorney-Client Privilege and/or Attorney Work

4

Product Doctrine Relating to Defendants' Risk Management and Mitigation Plan (Dkt. #99). Jacobs filed Defendants' Supplemental Brief regarding Inadvertent Disclosure of the "Mitigation Plan" (Dkt. #101). Shortly thereafter, this matter was stayed pending mediation between the parties. Neither of the parties to this discovery dispute complied with the court's Order (Dkt. #109) requiring counsel for the moving party to file a notice requesting that the motion to deem the documents inadvertently produced be reinstated upon unsuccessful conclusion of the mediation of this case. However, this discovery dispute was cited in Clark County's motion for the district judge to reconsider the trial date and the discovery plan and scheduling order deadlines. The undersigned learned that the parties still needed a decision on this dispute by reviewing the request to reconsider the discovery plan and scheduling order deadlines and trial date which was submitted to the district judge. The court has now again reviewed and considered all of the moving and responsive papers, the transcript of the September 29, 2011, hearing, and the arguments of counsel.

**A.   Jacobs' Position**

The mitigation plan is an internal Jacobs document prepared with and under the direction of Jacobs' in-house legal counsel, James J. Scott in 2003, to internally identify and discuss threatened or perceived claims by Clark County against Jacobs related to the CCDC and RJC projects, or the Justice Bond Projects. Jacobs claims that the mitigation plan was prepared to identify, analyze and discuss potential claims against Jacobs by Clark County. Every page of the mitigation plan is labeled "Client-Attorney Privilege: Confidential." The issues discussed in the mitigation plan relate to threatened or perceived claims by Clark County against Jacobs related to the Justice Bond Projects. Jacobs contends that the mitigation plan was never voluntarily shared with any third parties, including Clark County. Jacobs discovered during Clark County CCDC arbitration with AF Construction that Clark County and AF had obtained a copy of at least one version of the mitigation plan. Jacobs is not sure whether Clark County and AF received a copy of the mitigation plan during the CCDC arbitration in a document production and response to AF's subpoenas, or because Bechtel copied Jacobs' project records.[1] Jacobs initially took the position that how the mitigation plan was inadvertently produced was immaterial.

---

[1]Bechtel was a consultant for Clark County in the underlying CCDC arbitration.

1   Once Jacobs discovered that the mitigation plan was in the possession of Clark County and AF, Jacobs
2   notified the parties in writing that production was inadvertent and demanded a return of the privileged
3   documents.  At that time, Jacobs had an agreement with both AF and Clark County that any privileged
4   documents inadvertently produced would be immediately returned.

5          Jacobs demanded return.  AF returned all copies of the mitigation plan in its possession.  Jacobs
6   maintains that Clark County promised to gather all copies of the mitigation plan and to return them.
7   This agreement was memorialized in a November 8, 2005, email to counsel for Jacobs, Tim Thornton,
8   from counsel for Clark County, Rick Holderness.  Jacobs asserts that Clark County acknowledged in
9   November 2005, that the mitigation plan was a privileged document.  However, despite Mr.
10  Holderness' agreement to gather all copies of the plan and return them to Jacobs, this did not occur "for
11  reasons unknown to Jacobs."

12         Jacobs again produced the mitigation plan and related documents in this case and claims that its
13  production was inadvertent.  Jacobs asserts that it conducted an exhaustive privilege review of its
14  electronic records in the fall of 2010, using a DT search engine, and a laundry list of key words likely to
15  discover privileged documents.  Privileged documents were located and set aside from production using
16  this method.

17         In August 2011, Jacobs' counsel conducted searches of its Relativity electronic database of
18  documents to insure that the mitigation plan was not inadvertently produced in discovery in this case.
19  This was done in response to a reference by Clark County's counsel to the mitigation plan.  Until Clark
20  County's counsel made a reference to it, counsel for Jacobs had no reason to believe that the mitigation
21  plan had been inadvertently produced in this case.  Counsel for Jacobs subsequently discovered that
22  multiple versions of the mitigation plan were, in fact, inadvertently produced by Jacobs in this case.
23  Counsel for Jacobs initially believed that this occurred in one of two ways.  First, the words
24  "privileged" and "confidential" are misspelled on the document as "privilage" and "confindential".
25  These misspellings likely prevented the document from being caught during Jacobs' privilege review
26  which was conducted electronically.  Second, Jacobs believed that a small percentage of Jacobs' emails
27  were improperly indexed and downloaded to the DT search engine.  This indexing prevented discovery
28  / / /

6

of the documents by electronic search until they were loaded into the Relativity database used by Jacobs' counsel.

Jacobs was in the process of drafting a "claw-back" letter to Clark County with respect to other documents inadvertently produced at the time this issue was initially raised in the parties' Joint Status Report (Dkt. #91).  On August 17, 2011, counsel for Jacobs wrote counsel for Clark County a letter identifying seven documents as privileged and inadvertently produced and requesting an immediate return in accordance with Article 3 of the Court-Ordered document production protocol.[2]  These documents are described as follows:

1.   August 21, 2003 - David Roberts' email to Gary Johnston with attachment referenced on the face of email as "Risk Assessment and Mitigation (08-21-03)." Attachment to email is an undated version of the Risk Assessment titled "Clark County Risk Assessment and Mitigation Plan (Doc. Control No. 00206010 through 00206012);

2.   October 16, 2003 - Clark County Risk Assessment and Mitigation Plan (Doc. Control No. 00205581);

3.   October 16, 2003 - Clark County Risk Assessment and Mitigation Plan (Doc. Control No. 00273222);

4.   October 23, 2003 - David Roberts' email to David Roberts with attachment referenced on the face of email as "Risk Assessment and Mitigation (10-15-03). Attachment to email is "10-16-03 Clark County Risk Assessment and Mitigation Plan" (Doc. Control No. 205578-205581);

5.   January 8, 2004 - Clark County Risk Assessment and Mitigation Plan (Doc. Control No. 00097018);

6.   March 12, 2004 - David Roberts' email to David Roberts referencing "Risk Assessment and Mitigation (10-15-03)."  Attachment references "Specified

---

[2]The parties submitted a stipulated document production protocol as an attachment to the status report (Dkt.l #37) on July 19, 2010.  However, from a review of the docket, it does not appear that the court separately entered it in the form of an order.

1    source file was not found (9401)."  (Doc. Control No. JFI0000012905333-
2    1290534);
3    7.    March 16, 2004 - Clark County Risk Assessment and Mitigation Plan (Doc.
4         Control No. 0031646).
5    Additionally, the August 17, 2011, letter indicated that an earlier version of the mitigation plan
6    was apparently kept by AF or produced to AF by Clark County during the County's RJC arbitration
7    with AF, and marked as an exhibit by AF in the RJC arbitration plan.  The mitigation plan was marked
8    as AF's Exhibit PLX-4157.
9    The August 17, 2011 letter from Jacobs to Clark County demanded that Clark County locate and
10   return all copies of these documents in accordance with Article 3 of the Court-Ordered Document
11   Production Protocol.  Clark County refused, taking the position the privilege was waived and the
12   production was not inadvertent.  Jacobs brought the matter to this court's attention requesting a finding
13   by this court that the mitigation plan documents were inadvertently produced privileged documents
14   protected from disclosure by the attorney-client privilege and work product doctrine.  Jacobs also
15   requested an order requiring Clark County to: (1) return any and all copies of the mitigation plan to
16   Jacobs; (2) delete any copies of the documents on its electronic databases; and (3) retrieve any copies of
17   the documents from any third parties with which they were shared by Clark County.

18   **B.    Clark County's Position**

19   Clark County objected responding that it learned some time in 2005 during discovery in the
20   underlying RJC arbitration that Jacobs produced the mitigation plan on a compact disk to AF's counsel,
21   Watt Tieder Hoffer & Fitzgerald, LLP ("Watt Tieder").  Clark County believed that months later, Mr.
22   Thornton from Jacobs contacted Mr. Holderness from Clark County requesting that Clark County return
23   all copies of the mitigation plan claiming it was privileged.  Clark County refers to the November 2,
24   2005, letter from Mr. Holderness to Mr. Thornton in which Mr. Holderness agreed to collect and return
25   all copies of the documents and investigate how to delete it from the CD produced by Jacobs to Watt
26   Tieder.  In the letter, Mr. Holderness indicated he had only recently become aware of the document
27   although Jacobs had produced the CD months earlier.  The letter specifically said that Mr. Holderness
28   had "not confirmed whether it is actually privileged."  Thus, Clark County took the position that

1   although Mr. Holderness agreed to return the mitigation plan in 2005, it was not "entirely clear whether

2   it was confirmed that the mitigation plan was in fact privileged, and/or if Jacobs had waived that

3   privilege."

4         Until August 2011, Clark County believed that Mr. Holderness had returned all copies of the

5   mitigation plan to Mr. Thornton.  However, in a letter from counsel for Jacobs dated August 17, 2011,

6   counsel for Jacobs claimed that Mr. Holderness had not returned all copies of the mitigation plan.

7   Clark County argues that even if it true that Mr. Holderness did not return all copies of the mitigation

8   plan in 2005, there is no evidence in the record that Jacobs conducted any kind of follow up until its

9   August 17, 2011, correspondence demanding the return of the plan in this case.  Additionally, in the

10  exchange of correspondence between counsel, Clark County learned that a version of the mitigation

11  plan was identified as a potential exhibit in the underlying RJC arbitration between AF and Clark

12  County.

13        Clark County asserted in arguments to this court in response to Jacobs' demand for return of the

14  documents that "upon information and belief" Mr. Thornton wrote a letter to AF's counsel in 2004,

15  stating Jacobs was going to produce the Expedition database maintained by Jacobs on the Justice Bond

16  Projects without first conducting a privilege review, with the understanding that if any privileged

17  information was produced, it would be an inadvertent and unintentional disclosure.  Clark County

18  claimed that this procedure was not due diligence.  Clark County argued that because the mitigation

19  plan and related documents were produced in the underlying arbitration proceedings, and on at least

20  seven occasions in this case, that Jacobs' production could not be regarded as inadvertent.

21        Clark County also initially took the position that the mitigation plan was not protected by the

22  attorney-client privilege or work product privilege.  However, during oral argument on the matter

23  before this court prior to the stay, counsel for Clark County, Adam Blut, acknowledged that the

24  document was privileged.  Although conceding the document was privileged, Clark County took the

25  position that both the attorney-client privilege and the qualified work produce privilege had been

26  waived by Jacobs' multiple disclosures of the plan and related correspondence.  Clark County argued

27  that Jacobs waived any privilege protection by either: (1) willfully disclosing the mitigation plan in the

28  underlying CCDC arbitration; (2) willfully disclosing the mitigation plan in this case; (3) failing to

9

properly "claw back" the mitigation plan in the underlying CCDC arbitration; or (4) failing to diligently conduct a privilege review prior to disclosing the mitigation plan in either the underlying cases or this one.

### C.   Clark County's Supplemental Brief (Dkt. #99)

The supplemental brief provided additional information to the court about what Clark County claims was Jacobs' wide dissemination of the mitigation plan and document disclosures and deposition testimony over the past six years.  Specifically, Clark County claims:

- Jacobs produced the mitigation plan to AF Construction and Fireman's Fund Insurance Company in 2005;

- The mitigation plan was produced to Clark County in 2005;

- The mitigation plan was discussed without objection during the deposition of David Roberts on July 24, 2007;

- AFC identified the mitigation plan as an exhibit at the RJC arbitration on April 2, 2008;

- Jacobs produced its Expedition database to Clark County with numerous versions of the mitigation plan on it on March 25, 2011;

- On June 27, 2011, Clark County notified Jacobs that it was aware of the mitigation plan because Jacobs had  produced the document in the underlying arbitration;

- Jacobs confirmed it had produce the mitigation plan to Clark County five times and another document that references the mitigation plan in its August 17, 2011 letter;

- Clark County discovered additional productions of the mitigation plan in Jacobs' March 25, 2011 disclosures on October 13, 2011.  The mitigation plan was produced six times and documents referring to it two times.

Thus, Clark County argued that Jacobs had produced the mitigation plan in either this case or the underlying arbitrations at least thirteen times.  Clark County maintained that Jacobs' failure to protect privileged documents, including the mitigation plan, and lack of effective document control policy waived any privilege that might otherwise apply.

/ / /

/ / /

10

1

**D.      Defendants' Supplemental Brief (Dkt. #101)**

2      Jacobs' supplemental brief argued that it had inadvertently produced a handful of copies of the

3   risk management mitigation plan generated by its legal department.  Jacobs also argued in the

4   supplemental brief that the court should not be considering the issue of inadvertent production or

5   waiver because Clark County surrendered the right to argue waiver in this case by entering into a

6   Document Production Protocol (Dkt. #37).

7      After the September 29, 2011, status conference, in which the production of the mitigation plan

8   and related documents was initially addressed with the court, Jacobs' counsel spent significant time

9   investigating the facts surrounding the inadvertent disclosure of the mitigation plan in this litigation,

10   and in the underlying two arbitrations with the general contractor on both projects, AF Construction.

11   Jacobs maintained that it took reasonable, customary and diligent precautions to prevent the inadvertent

12   disclosure of the plan; that the disclosure of the mitigation plan was not extensive, especially given the

13   significant amount of discovery in this litigation; and that it took immediate steps to pull back the

14   mitigation plan upon discovery of its disclosures.  Jacobs argued that fundamental principles of fairness

15   should not allow Clark County to capitalize upon its inadvertent disclosure of a document prepared

16   under the direction of Jacobs' internal counsel to analyze the very claims at issue in this litigation.

17      Jacobs' supplemental brief is supported by multiple affidavits and exhibits which document the

18   investigation of the facts surrounding the inadvertent disclosure of the mitigation plan conducted after

19   the September 29, 2011, hearing.  Jacobs' counsel, Greensfelder, Hemker & Gale, P.C.

20   ("Greensfelder"), indicated that counsel was incorrect in its representations to the court of the

21   September 29, 2011, hearing about how the mitigation plan was inadvertently produced in this case.

22   Greensfelder initially believed that the documents were inadvertently produced as part of email

23   productions made in the fall of 2010.  However, on further review after the September 29, 2011,

24   hearing, counsel learned that six copies of the plan were produced as part of its Expedition hard drive

25   production in March 2011.  The Expedition hard drive consisted of 67,413 emails with attachments, or

26   hundreds of thousands of documents.  Greensfelder attorneys did not realize that its representations to

27   the court at the September 29, 2011, hearing were inaccurate until days before the supplemental brief

28   was filed.

Counsel for Jacobs outlined the extensive privilege review conducted as part of the production of both the email files and the Expedition hard drive. The privilege reviews were performed by paralegals and IT department individuals under the direction of Mark Menghini, an officer of the law firm. The Expedition hard drive was searched for privilege initially by a litigation paralegal using the Relativity database, a litigation document review program which replaced the law firm's DT Search and Summation databases. The head of Greensfelder's IT department received training on the Relativity database and administered training to Greensfelder attorneys and paralegals working on this case.

Between March 11, 2011, and March 22, 2011, the paralegal recorded nearly thirty-seven hours of time spent in privilege review of the Expedition hard drive. She ran dozens of word searches from a list of key words prepared by the law firm. For reasons counsel cannot explain, the phrase "client-attorney" was used on the mitigation plan, rather than the phrase "attorney-client". In addition to the paralegal's review, Mr. Menghini and Jacobs' IT department conducted a review of the online Expedition database. Potentially privileged documents were segregated from production as privileged or placed into the Expedition hard drive production. Documents that were not culled out through the key word search were produced. The paralegal consulted with Mr. Menghini if she had any questions concerning privilege. After the privilege review was completed, Greensfelder's IT department reviewed the privileged findings and prepared the non-privileged Expedition hard drive for production to the Plaintiff.

After realizing that the mitigation plan had been inadvertently produced in this litigation, Greensfelder took immediate steps to claw back the documents. Mr. Menghini's August 17, 2011, letter to counsel for Clark County identified the documents that were inadvertently produced and demanded their return pursuant to Article 3 of the document protocol. Counsel for Jacobs represents that in excess of 325 hours of paralegal and attorney time was spent conducting diligent and customary privilege reviews of the electronic documents. The mitigation plan was identified and withheld from production fifty-seven times during the review of millions of documents and only six copies were produced in a single document production.

Jacobs' supplemental brief also outlined how the mitigation plan was inadvertently disclosed during the CCDC arbitration, and in the RJC arbitration. The CCDC arbitration was the first of two

1   arbitration proceedings between Clark County and AF Construction and took place in 2004 - 2005.  The

2   parties to that arbitration were Clark County, AF Construction and AF's surety, Fireman's Fund

3   Insurance Company.  Jacobs does not know how the mitigation plan was produced during the course of

4   the CCDC arbitration.  However, after discovering the document was in the possession of both Clark

5   County and AF, Jacobs took prompt action to claim privilege and inadvertent production and demand

6   return of the document.  Counsel for both AF and Clark County agreed to gather and return all copies of

7   the document.

8          The document was also inadvertently disclosed during the RJC arbitration which occurred

9   between 2006 and 2008, following the conclusion of the CCDC arbitration.  Jacobs was not a party to

10  the RJC arbitration.  A few days before the RJC arbitration hearings were scheduled, Jacobs learned

11  that the mitigation plan was in AF's possession, and that AF had marked it as an exhibit for use at the

12  hearing.  Jacobs protested.  Both counsel for AF and Clark County recognized the document was

13  privileged and inadvertently produced, and the document was not used at the hearing.  Counsel for

14  Jacobs investigated and determined that Jacobs had not produced the document during the RJC

15  litigation, and that the mitigation plan had been listed on Jacobs' privilege document log.  AF's counsel

16  confirmed in April 2008, that the mitigation plan had not been produced by Jacobs in the RJC litigation.

17  Rather, AF's counsel believed that the mitigation plan had been produced in 2004 as part of the CCDC

18  arbitration.  Thus, counsel for Jacobs concludes that the mitigation plan was not produced as part of the

19  RJC document production and was likely produced either as part of the CCDC production or by some

20  third-party who obtained a copy without Jacobs' knowledge or permission.  However, Jacobs

21  emphasizes that it went to great lengths to protect privileged documents in general and the mitigation

22  plan in particular.  Jacobs did not act carelessly or cavalierly with respect to maintaining confidentiality

23  of the mitigation plan and acted swiftly to protect its status as a privileged document.

24                                          **DISCUSSION**

25         Although initially contested, Clark County has conceded that the mitigation plan is privileged.

26  The parties stipulated to a document production protocol which was attached as an exhibit to their July

27  19, 2010, Status Report (Dkt. #137).  Because it was an attachment and not separately submitted, it was

28  not detached and not separately filed in the form of an order.  The court considered the protocol along

1   with a number of other matters at the July 27, 2010, status hearing, and there is no question that the

2   parties submitted the stipulation requesting that an order be entered approving the stipulation.  The

3   court will therefore correct the oversight and enter the stipulation in the form of an order *nunc pro tunc*

4   to the date it was submitted, July 19, 2010.

5        Counsel for Jacobs is correct that the court inartfully described the parties' dispute at the

6   September 29, 2011, hearing as one of waiver.  More correctly, the issue is whether Jacobs, as the

7   holder of he privilege, inadvertently produced the document, and whether Jacobs took reasonable steps

8   to prevent the initial disclosure, and to promptly rectify the error once discovered.

9        Paragraph 3 of the parties' document production protocol provides, in pertinent part:

10       The parties agree that the Producing Party is not waiving, and the Requesting Party will not
         argue that the Producing Party has waived, any claims of attorney-client privilege, attorney

11       work product protection, or any privilege or protection, including protections enumerated
         in the Protective Order, by making the documents available for examination.  In the event

12       the Producing Party becomes aware of any inadvertent disclosure/production of privileged
         information or a privileged document, the Producing Party shall immediately advise the

13       Requesting Party of its position that the document is protected by either the attorney-client
         privilege or work product doctrine.  In such an event, the document(s) (A) (and all copies)

14       shall be returned to the Producing Party, and no use of the document shall be made by the
         Requesting Party unless and until the parties mutually agree that the document is not

15       protected, or the Court orders as such.

16       The parties therefore stipulated that an inadvertent production would not waive any applicable

17   privilege and that the requesting party, or party receiving inadvertently produced documents, would not

18   argue that the producing party had waived privilege.

19       Additionally, Federal Rule of Evidence 502 became effective September 19, 2008 and provides

20   in pertinent part:

21       The following provisions apply, in circumstances set out, to disclosure of a
         communication or information covered by the attorney-client privilege or

22       work-product protection.

23       . . .

24       b.  **Inadvertent Disclosure.**  – When made in a federal proceeding or to
             a federal office or agency, the disclosure does not operate as a waiver

25           in a federal or state proceeding if:

26           (1)  the disclosure is inadvertent;

27           (2) the holder of the privilege or protection took reasonable steps to
             prevent disclosure; and

28

14

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

. . .

f. **Controlling Effect of This Rule**. – Notwithstanding Rules 101 and 1101, this rule applies to state proceedings and to federal court-annexed and federal court-mandated arbitration proceedings, in the circumstances set out in the rule. And notwithstanding Rule 501, this rule applies even if state law applies the rule of decision.

*Id.*

Pursuant to Rule 502(b), disclosure of attorney-client privileged materials does not operate as a waiver if: (1) the disclosure was inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took legal steps to rectify the error. In the Ninth Circuit, a totality of the circumstances approach is taken to determine whether "inadvertent" disclosure of privileged information results in a waiver of applicable privileges. *United States ex rel. Bagley v. TRW, Inc.*, 204 F.R.D. 170, 177 (C.D. Cal. 2001). Factors to be considered in determining whether the disclosure was inadvertent include: (a) the reasonableness of precautions used to prevent inadvertent disclosure; (b) the time taken to rectify the error; (c) the scope of discovery; (d) the extent of the disclosure; and (e) the overriding issue of fairness. *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1045 (D. Nev. 2006), affirmed in part, reversed in part on unrelated grounds, 568 F.3d 684 (9th Cir. 2009). *See also* Fed. R. Evid. 502, Advisory Committee Note (b). As a general rule, the burden of proving inadvertent disclosure is on the party asserting the privilege. *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 417-19 (N.D. Ill. 2006), *supplemented by*, 432 F. Supp. 2d 794 (N.D. Ill. 2006).

The Advisory Committee Notes to the 2008 Amendments to the Rule 502 of the Federal Rules of Evidence indicate that the Rule was intended to resolve long-standing disputes in the courts about the effect of certain disclosures of communications or information protected by the attorney-client privilege, or the work product privilege involving inadvertent disclosure and subject matter waiver. The Rule was also intended to respond to widespread complaints about the prohibitive cost of protecting against waiver of attorney-client privilege and work product protection in litigation, especially in cases involving electronic discovery.

1    Prior to the enactment of the amendment to Rule 502 in 2008, the courts had taken three

2  different approaches in deciding whether an inadvertent disclosure of privileged information constituted

3  a waiver.  A few courts had found that disclosure must be intentional to waive privilege.  Most courts

4  had found a waiver only if the disclosing party acted carelessly, and a few courts had held that

5  inadvertent disclosure of attorney-client or work product information constitutes a waiver without

6  regard to the protections taken to avoid disclosure.  The comment to Rule 502 indicated that the Rule

7  opted for the middle ground by providing that inadvertent disclosure of protected communications or

8  information does not constitute a waiver if the holder took reasonable steps to prevent disclosure and

9  also promptly took reasonable steps to rectify the error.  The Rule was amended to reflect the majority

10  view on whether inadvertent disclosure constitutes a waiver.

11    Both Clark County and Jacobs have now submitted detailed affidavits and exhibits outlining

12  what occurred in document productions in the underlying CCDC and RJC arbitrations, and in this

13  federal case which resulted in the disclosure of Jacobs' mitigation plan.  Counsel for Jacobs, Mark

14  Menghini, acknowledges that his initial description of how the document was produced in this case was

15  inaccurate.  He was also not aware of the details of how the document was produced in the underlying

16  arbitrations until shortly before submitting the supplemental brief and supporting affidavits and

17  exhibits.

18    Based on the preliminary information the court received in the parties' September status report

19  and at the September 29, 2011, hearing, the court advised counsel for the parties of an inclination to

20  find waiver.  However, because it was undisputed that the mitigation plan was highly sensitive and

21  privileged, the court allowed counsel for both sides to provide the court with detailed information to

22  assess whether the document was or was not inadvertently produced, and whether reasonable steps were

23  taken to prevent disclosure and rectify the error once discovered.  The court has now carefully reviewed

24  the voluminous affidavits, declarations and exhibits submitted by counsel for both parties.  The court

25  finds that Jacobs' disclosure of the mitigation plan was inadvertent, that Jacobs took reasonable steps to

26  prevent disclosure, and that Jacobs promptly took legal steps to rectify the error once counsel

27  discovered the document had been produced.

28  / / /

It is clear from the affidavits, correspondence, emails and other exhibits submitted to the court that Jacobs had an agreement with Clark County and with AF Construction and its surety, Fireman's Fund that it would produce voluminous documents in the CCDC and RJC litigation with the understanding that if any privileged materials were inadvertently produced, the parties would not take the position any applicable privilege was waived.  Counsel for Jacobs has now provided the court with a detailed account of the steps taken in the underlying arbitrations to produce voluminous documents in response to discovery requests.  It is also clear from the affidavits and supporting exhibits that Jacobs, Clark County and AF Construction and its surety, Fireman's Fund, also had a joint defense and tolling agreement that provided for non-waiver of privilege.  Jacobs was not a party to either the CCDC or RJC arbitrations.  When Jacobs discovered in 2005 that the mitigation plan had been produced it promptly wrote to counsel for Clark County and counsel for AF Construction and Fireman's Fund to protect the privilege and rectify the error.  Both counsel for Clark County and counsel for AF Construction and Fireman's Fund affirmatively agreed to find and return all copies of the mitigation plan and not to use it for any purpose.  The court therefore finds that Jacobs did not waive the attorney-client privilege or work product protection for the document because of its inadvertent production in either the CCDC or RJC litigation and arbitrations.

Jacobs' supplemental brief and supporting affidavits and exhibits also provides considerably more information about the document production and privilege review process in this case which resulted in disclosure of the mitigation plan and related correspondence.  The court is satisfied that Jacobs' disclosure was inadvertent, that Jacobs took reasonable steps to prevent disclosure, and prompt steps to rectify the error once discovered.

At least 1.5 million pages of documents have been produced in this case, much of it in electronic form.  Jacobs identified the mitigation plan on its privileged document log and withheld it fifty-seven times in its productions.  Jacobs initially believed that the document was produced in its email files which were produced on a rolling basis beginning on September 2, 2010, through January 7, 2011.  However, in preparing its supplemental brief, counsel discovered this is not what happened.  The affidavits of he paralegals, associate attorney and officers of the law firm who were involved in the process, as well as the head of the law firm's IT department described in detail what was done to

17

1   prepare the documents for production.  The affidavits and supporting exhibits also detail the efforts

2   made to identify, segregate and withhold privileged documents from production.  Three different levels

3   of privilege review were conducted, initially by a paralegal, then by an associate attorney, and finally by

4   an officer of the law firm.

5          Counsel for Jacobs took prompt steps to rectify the error when it learned Clark County had a

6   copy of the mitigation plan.  Considering the scope of discovery, the fact that the document was

7   identified on Jacobs' privileged document log and fifty-seven copies withheld also persuades the court

8   that the disclosure was inadvertent.  It appears that this version of the mitigation plan slipped through

9   the proverbial cracks because it was labeled "client-attorney" rather than "attorney-client" privileged.

10  This is a multi-million document case preceded by two underlying litigations that went to arbitration

11  also involving millions of documents produced on the same projects.  In this era of document intensive

12  electronically stored information it is simply cost prohibitive to expect or require a record-by-record

13  pre-production privilege review lest the producing party be deemed to have waived privilege.  The time

14  and resources required of the parties and the court to litigate complex, document intensive cases

15  involving substantial electronically stored information, demand a more practical, and proportional

16  evaluation of inadvertent disclosure problems. The parties stipulated to a document production protocol

17  to avoid disputes of this nature.  Rule 502 was designed to strike the balance between the need to

18  protect privilege and the need to avoid cost prohibitive and time consuming document-by-document

19  review.

20          The mitigation plan is privileged and Jacobs has not waived either the attorney-client privilege

21  or work product protection for the document because it was inadvertently produced in this case, or in

22  the underlying CCDC and RJC arbitration cases.

23          For the reasons stated,

24          **IT IS ORDERED** that:

25          1.      Clark County shall return any and all copies of the mitigation plan to Jacobs;

26          2.      Clark County shall delete any copy of the mitigation plan and related correspondence on

27                  its electronic databases; and

28          3.      Clark County shall retrieve any copies of the mitigation plan or related documents from

18

any third parties with which they were shared by Clark County.

4.    The Clerk of Court shall detach, file and enter the parties stipulated document production protocol which was attached as Exhibit 2 to the parties joint status report (Dkt# 37), *nunc pro tunc* as of July 19, 2010.

Dated this 1st day of October, 2012.

_____

Peggy A. Leen
United States Magistrate Judge