UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| CLARK COUNTY, a political subdivision of the State of Nevada,<br><br>Plaintiff,<br><br>vs.<br><br>JACOBS FACILITIES INC., a Foreign Corporation; and/or CRSS CONSTRUCTORS, INC., a Foreign Corporation; ROE Corporations I-X,<br><br>Defendants. | Removed from the District Court of Clark County, Nevada (Business Court)<br><br>Case No.: 2:10-cv-00194-LRH-PAL<br><br>**PARTIES' DOCUMENT PRODUCTION PROTOCOL** |

COME NOW Plaintiff Clark County and Defendants Jacobs Facilities Inc., and CRSS Constructors, Inc. (collectively, "Jacobs") by and through their undersigned attorneys, and submit this proposed "Document Production Protocol".

## DOCUMENT PRODUCTION PROTOCOL

The Parties agree to the following protocol for the production of Discoverable Documents and Electronically Stored Information. As used in this document, the term "Discoverable Documents and Electronically Stored Information" means discoverable documents and data existing in electronic form consistent with Fed. R. Civ. P. 34(a), including by way of example and not by way of limitation (where relevant and not privileged) e-mail, calendars, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible electronically stored information relevant to the claim(s) or defense(s) of any party subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1).

The Parties further agree that they will be guided by the Federal Rules of Civil Procedure Guidelines for Discovery of Electronically Stored Information.

1. **Electronic discovery**. Discovery of electronically stored information shall proceed in the following sequenced fashion:

    a. After receiving requests for document production, the Producing Party shall conduct a reasonable and good faith search for responsive documents and electronically stored information. A Producing Party will disclose to a Requesting Party the existence of those sources of electronically stored information that it believes contain responsive information and that are not reasonably accessible, and, to the extent necessary, the Parties will meet and confer concerning such information that has been identified as not reasonably accessible, but a Producing Party shall not have an obligation initially to search or produce from sources of electronically stored information that it identifies as not reasonably accessible because of undue burden or cost in accordance with Fed. R. Civ. P. 26(b)(2) and no such obligation will exist unless and until a showing of good cause is made by the Requesting Party that such searches and production are necessary pursuant to Fed. R. Civ. P. 26(b)(2)(c);

    b. The Producing Parties retain their right to argue that certain sources of electronically stored information are not reasonably accessible because of undue burden or cost and further retain their right to seek cost shifting, as appropriate, in the event a Requesting Party demands and shows good

    cause supporting production from sources that were deemed by the Producing Party as not reasonably accessible; and

 c. On-site inspections of electronic media under Fed. R. Civ. P. 34(a)(2) shall not be permitted, unless otherwise agreed to by the parties or absent exceptional circumstances where good cause and specific need have been demonstrated.

2. **General Format of Production**. Subject to the provisions of paragraph 4, documents that originally existed in electronic form that are produced in these proceedings shall be produced in electronic image form (described below) in the manner provided herein. Documents that originally existed in paper form may be produced in an electronic image form in the manner provided herein, produced in a paper form or made available for initial examination as outlined in paragraph 3. Notwithstanding the foregoing provisions of this paragraph, the Producing Party reserves the right to request that an alternative format or method of production be used for certain documents and, in that event, the parties will meet and confer to discuss alternative production requirements, concerns, formats, methods and costs associated with same.

3. **Initial Examination of Records**. The Producing Party reserves the right to make certain sets of documents available for initial examination by the Requesting Party. The Requesting Party will select those documents it wishes to have produced. The Producing Party reserves the right to review and screen for privilege or protection any document that is selected for production. The Producing Party may withhold from that production any privileged document and identify the privileged document on a privilege log as outlined in paragraph 17. The parties agree that the Producing Party is not waiving, and the Requesting Party will not argue that the Producing Party has waived, any claims of attorney-client privilege, attorney work

product protection, or any other privilege or protection, including protections enumerated in the Protective Order, by making documents available for examination. In the event the Producing Party becomes aware of an inadvertent disclosure/production of privileged information or a privileged document, the Producing Party shall immediately advise the Requesting Party of its position that the document is protected by either the attorney-client privilege or attorney work product doctrine. In such an event, the document(s) (and all copies) shall be returned to the Producing Party, and no use of the documents shall be made by the Requesting Party unless and until the parties mutually agree that the document is not protected, or the Court orders as such. In the event the Requesting Party disagrees with the Producing Party's classification of the document(s) as protected, it shall be the Requesting Party's burden to seek the Court's ruling on the issue.

4. **Document Image Format**. Document images produced in electronic form will be produced in single- or multi-page Tagged Image File Format ("TIFFs" or ".tiff format"). All images generated from hard copy documents shall be scanned as black and white images at at least 300 d.p.i. resolution and shall be saved and produced in a Group 4 compression single- or multi-page "TIFF" format and reflect the full and complete information contained on the original document. All images generated from native electronic documents shall be saved electronically (or "printed") in a Group 4 compression single-or multi-page "TIFF" image that reflects the full and complete information contained on the original document. Meta-data for documents generated from native electronic documents shall be provided as set forth in paragraph 11. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software such as Summation or Concordance. Notwithstanding the foregoing provisions of this

paragraph, the parties recognize that it may be appropriate for certain files to be produced in native file format in the first instance (e.g., Excel, Lotus 123, or other spreadsheets; e-mails; reports from databases); the Producing Party shall have the option to produce those certain types of files in native format. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer to attempt to resolve the problems.

5. **Document Unitization**. If hard copy documents are scanned into an electronic form, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process.

6. **Color**. If an original document contains color, the Producing Party shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document. The Requesting Party agrees to pay for reasonable costs associated with the color scanning and production of color images of documents already produced.

7. **Duplicates**. Where a party has more than one identical copy of an electronic document (i.e., the documents are visually the same and contain the same electronic text), the Producing Party need only produce a single copy of that document. Furthermore, the parties are not required to produce multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients) can be identified

from documents or electronically stored information produced pursuant to this protocol and, as described in the remainder of this paragraph, and no information is missing from the electronic message. Where a subsequent electronic mail message contains all of the portions of an earlier message produced pursuant to this protocol, it is not necessary for a producing party to produce the earlier message in addition to the subsequent inclusive message. If the subsequent inclusive message does not include an attachment to an earlier message, the attachment must also be produced pursuant to this protocol, in addition to the subsequent inclusive message.

8. **Bates Numbering**. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use. The confidential legend shall be "burned" onto the document's image at a location that does not unreasonably obliterate or obscure any information from the source document.

9. **File Naming Conventions**. Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF." In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

10. **Production Media**. A Producing Party shall produce documents that it produces in an electronic image form pursuant to paragraph 2 on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Information that shall be identified on the physical Production

Media shall include: (1) a reference to this case number, (2) the Producing Party's name, and (3) the production date. The Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production an explanation of how to decrypt the files.

The Producing Party agrees to produce the electronic discovery in TIFF format per paragraph 4, with OCR text files and the appropriate document breaks contained in a Concordance .dat load file. Additionally, all pages will be scanned from paper using the standard Group IV, 2-Dimension single page Tagged Image File Format (TIFF), or JPEG when necessary for color photographs, or black and white pages requiring grey scale.

11. **Meta-Data**. To the extent a Producing Party extracts any of the following metadata fields associated with its email production, the Producing Party will produce those metadata fields to the Requesting Party:

    a. Subject line

    b. Date sent

    c. Sender/Author

    d. Recipients(s)

    e. Copyee(s)

    f. Blind copyee(s)

Producing Parties will also produce the following additional information as described below with each production. For images generated from native electronic documents, a Producing Party shall produce a load file with each production with the following fields, where available and reasonably accessible:

g.  Starting Bates (Beginning documents Bates number);

h.  Ending Bates (Ending documents Bates number);

i.  Begin Attach (Beginning Bates number for any attachment or range of attachments);

j.  End Attach (Ending Bates number for any attachment or range of attachments); and

k.  Source (custodian/location from which document was collected).

Alternatively, a Producing Party can satisfy its obligations under subparagraphs i. and j. above by providing information sufficient to identify any attachments to the documents produced. The meta-data listed above shall be labeled and produced on Production Media and shall be provided in a manner suitable for importing the information in a commercially available document management or litigation support software such as Summation or Concordance

12. **Search Terms**. The parties shall meet and confer on search terms to be used for electronic documents to identify electronic documents that will be reviewed for possible production.

13. **Databases**. To the extent response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Producing Party shall produce reports from the database. Upon review of the reports, the Requesting Party may make reasonable requests for additional information to explain the database scheme, codes, abbreviations or to request reports in different formats.

14. **Production of Other Electronic Documents**. This Order only applies to the production of the following categories of electronic documents: databases, e-mails (and any

associated attachments), word processing documents, spreadsheets, presentations, imaged documents (in any format), and construction documents. The parties shall meet and confer to agree on the form of any production of electronic documents other than the foregoing.

15. **Exceptions to Protocol**. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion to seek individual relief from this protocol.

16. **Use of Documents**. When documents produced in accordance with this Order are used in any Proceeding herein, including depositions, hearings, or trial, the image copy of documents as described in Paragraph 4 shall be the copy used. Extracted text shall not be used in any Proceeding as a substitute for the image of any document.

17. **Privilege Logs**. The Producing Parties will produce privilege logs in Excel format or a similar electronic format that allows text searching and organization of data. A Producing Party will produce a privilege log within 120 days after the completion of its document production. When there is a chain of privileged e-mails, the Producing Party need only include one entry on the privilege log for the entire email chain, and need not log each e-mail contained in the chain separately. The production of a privilege log for a custodian will be not less than 30 days prior to a custodian's deposition. The parties may modify the deadlines for production of privilege logs by agreement.

18. **Costs of Production**. The parties reserve the right to seek cost shifting as appropriate at a later time.

19. **Service of Documents, Data and Privilege Logs**. Service of documents, data and privilege logs under this Order shall be made to both liaison counsel for Plaintiffs and liaison counsel for Defendants.

20. **Discovery and Admissibility**. Nothing in this Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

IT IS SO ORDERED:

Dated this 1st day of October, 2012.
*Nunc pro tunc* July 19, 2010.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE